**FILED**
**Nov 21, 2022**
**01:40 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **LISA COOK,** | ) | **Docket No. 2021-05-0644** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **NEWTON NISSAN OF GALLATIN/** | ) | **State File No. 57259-2020** |
| **NEWTON FORD, LLC,** | ) | |
| **Employer,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **SECURITY NAT. INS. CO.,** | ) | **Judge Dale Tipps** |
| **Carrier.** | ) | |

---

### EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an Expedited Hearing on November 10, 2022, on whether Ms. Cook is entitled to additional medical treatment, specifically treatment at the Vanderbilt Pain Management Center, or a panel to replace the pain management panel already provided by Newton. The Court finds that the panel was invalid and, therefore, she is likely to prevail at a hearing on the merits that she is entitled to a new panel.

### History of Claim

Ms. Cook, an automobile salesperson, was injured at work on August 4, 2020, when the tailgate of a vehicle fell on her left wrist. Although she reported the injury to her supervisors, they did not offer her any medical treatment. As a result, she went to the local emergency room after she left work. The emergency room doctor recommended that Ms. Cook follow up with an orthopedist, and she made an appointment with Brian Peterson Orthopedics, where she saw a physician's assistant several times.

On referral from Peterson Orthopedics, Ms. Cook began seeing Dr. Kyle Joyner,

who determined she was not a surgical candidate.[1]  However, he assessed causalgia and referred her to Dr. Jeffrey Hazlewood, a physiatrist, "to determine if there may be a component of CRPS[2] or radial sensory neuropathy requiring further treatment."

Dr. Hazlewood diagnosed deQuervain's tenosynovitis and provided conservative treatment for three visits.  On June 7, he said he had no explanation for her ongoing pain and wrote, "I have done everything I can do."  Dr. Hazlewood suggested that she contact Dr. Joyner to see whether he would be willing to see her again and possibly operate on her deQuervain's condition.  He added, "If Dr. Joyner tells her he will see her back, I will be glad to refer her back to him as I have no further options of treatment."  He then said he would see her in three months for follow-up.

Ms. Cook returned to Dr. Joyner, and he referred her to Dr. Michael Bowman for a nerve block.  On her first visit, Dr. Bowman concluded that she met the Budapest criteria for CRPS.  When the nerve block provided limited relief, he prescribed medication and occupational therapy.  The last time Dr. Bowman saw Ms. Cook, she reported no improvement from her continuing left-wrist pain.  He changed her prescription but felt that she had exhausted conservative measures.  He suggested that if she did not improve during the eight weeks before her next appointment, he could either refer her to Vanderbilt or order a functional capacity evaluation.

Ms. Cook called Dr. Bowman's office shortly before her return visit and opted for the referral.  He referred her to "Vanderbilt Complex Regional Pain Syndrome Center" on January 4, 2022, for "Pain Medicine.  Evaluate and treat."  His clinical reasons for the referral were, "Second Opinion.  Complex Regional Pain."  Newton provided a panel of pain-management physicians two days after the referral.

Drs. Bowman and Hazlewood both gave somewhat lengthy depositions in this case.[3] Dr. Bowman disagreed with Dr. Hazlewood's diagnosis of deQuervain's tenosynovitis.  He also testified that, when he last saw Ms. Cook, her objective symptoms had improved to the point that he was unsure whether she had CRPS.

Dr. Hazlewood admitted that he referred Ms. Cook back to Dr. Joyner, although he said he would be willing to see her again.  He repeated the tendonitis diagnosis and said she did not have CRPS.

Ms. Cook testified during the hearing that she suffers significant pain in her left

---

[1] Newton authorized Ms. Cook's treatment with Dr. Joiner and, at some point, paid for her previous unauthorized treatment.

[2] Complex regional pain syndrome.

[3] Most of the deposition testimony is irrelevant to the only issue before the court – whether Ms. Cook is entitled to a direct referral or a new panel.  Therefore, the Court will not summarize the depositions in detail at this time.

wrist every day. This pain has been constant and unrelenting since the day of the accident, and it interferes with her work and daily activities. Ms. Cook also confirmed that, except for the pain-management panel, Newton never offered her a panel of physicians.

At the conclusion of the hearing, Ms. Cook requested treatment at the Vanderbilt Pain Management Center. She objected to the panel from Newton because it included Dr. Hazlewood, who had already referred her back to the orthopedists, and two doctors in the Knoxville area, which is far from her home in Lascassas. She contended the panel is not valid and, if the Court will not order treatment at Vanderbilt, she is entitled to a panel of physicians that complies with the locality requirements of Tennessee Code Annotated section 50-6-204(a)(3)(A)(i).

Newton argued that Ms. Cook must select from the existing panel. It contends Dr. Bowman's direct referral was invalid because he referred Ms. Cook to the Vanderbilt Complex Regional Pain Syndrome Center, which is not the correct name of the clinic. Newton also maintains that it provided the panel within two days of the referral and it meets the statutory requirements for a pain-management panel.[4]

## Findings of Fact and Conclusions of Law

For the Court to grant Ms. Cook's request, she must prove she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2022); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Newton first argued that Dr. Bowman's referral to Vanderbilt Complex Regional Pain Syndrome Center was invalid because that is not the correct name of the practice. This argument borders on the absurd, since the referral also included the address and telephone number of the Vanderbilt Pain Management Center. It would have taken little or no effort to either contact the clinic or Dr. Bowman for clarification.

Newton also contended that the entire referral was invalid because it was for a second opinion, which is prohibited by Tennessee Code Annotated section 50-6-204(j)(3). This argument is similarly unpersuasive, as the section in question clearly contemplates an employee's right to a second opinion related to their pain-management treatment, not their referral by an authorized doctor to a pain-management provider.

Which brings the Court to the crux of this case – Newton's contention that Ms. Cook is entitled only to the existing pain management panel. Both parties briefed this issue as one governed by Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii). However,

---

[4] Newton also asked the Court for a finding that Ms. Cook has reached maximum medical improvement and contended that she does not have CRPS. Since this is not relevant to the issue of whether Ms. Cook is entitled to treatment at Vanderbilt or to another panel, the Court will not address this request.

because the referring physician, Dr. Bowman, was not selected from a panel, this section is inapplicable. *Ducros v. Metro Roofing and Metal Supply Co., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 62, at *9 (Oct. 17, 2017). Thus, the specific question before the Court is: what is the effect, if any, of a direct referral from a non-panel authorized physician?

The current statute gives no answer to this question, and the Court has identified no explicit authority for ordering an employer to honor a direct referral to a specific provider in this situation. Further, before section 50-6-204(a)(3)(A)(ii) was included in the 2013 reform legislation, the previous statute was silent regarding direct referrals to a specific doctor or practice. Instead, the statute (and case law) merely focused on whether an employer timely provided a panel when an authorized doctor made a referral to another specialist. In this case, Newton offered a panel within two days of the referral. Under pre-reform law, this would have been a sufficient response, and Ms. Cook would have been obliged to select a physician from the panel.

The Court finds that this is the appropriate procedure for the current case. When no specific statutory authority exists for a direct referral, the employer is only required to provide a panel when the treating doctor refers an employee to a specialist.[5] This is consistent with *Thompson v. Comcast Corp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *20-22 (Jan. 30, 2018) (because an employee did not seek pain management on his own when the employer failed to provide a panel, he was not allowed to select his own specialist).

However, that does not end the analysis. Ms. Cook contended that the pain management panel is invalid for two reasons. First, she objected to the fact that the other two doctors on the panel are a great distance from her home. She acknowledged that Tennessee Code Annotated section 50-6-204(j)(2)(A) allows pain-management panels to include doctors up to 175 miles from an employee's residence, but she argued that this was not just a pain-management referral. Instead, Ms. Cook maintained that Dr. Bowman referred her for evaluation and treatment.

This argument overlooks the fact that Dr. Bowman specifically referred Ms. Cook to a pain-management clinic. Even though he testified that he wanted Vanderbilt to evaluate her and possibly offer treatment that he could not, this is consistent with the statutory description of pain management as "pharmacological, nonpharmalogical and other approaches to manage chronic pain." Tenn. Code Ann. § 50-6-204(j)(1). Further, Ms. Cook admitted in her responses to requests for admissions that the referral was to a pain-management specialty group.

---

[5] The Court recognizes that this approach could potentially reward Newton for failing to give the initial panels. However, even if that is the unintended effect of the statute, the Court is constrained by the language used by the General Assembly.

Ms. Cook's second argument is more persuasive. She contended that the panel was invalid because it included Dr. Hazlewood, who had already treated her and said that he had nothing further to offer. So, she maintained that Newton failed to offer a panel of three physicians who were willing and able to treat her.

The Court agrees. Dr. Hazlewood made it very clear during Ms. Cook's last visit that he had no explanation for her ongoing pain, saying, "I have done everything I can do." He then told Ms. Cook that he would refer her back to Dr. Joyner if she wished to return to him, and she chose to do just that.

Newton argued that Dr. Hazlewood testified in his deposition that he would be willing to see Ms. Cook again to reevaluate her and "see if there are any other options." However, Dr. Hazlewood was deposed almost six months after Newton included him on the panel, and no evidence suggests that it consulted with him before doing so. Thus, the evidence shows that at the time Newton gave the panel, Dr. Hazlewood had released Ms. Cook, did not know why she was hurting, and had no treatment to offer her. Under those circumstances, his inclusion did not meet the requirement of providing a panel of three physicians as described in Tennessee Code Annotated section 50-6-204(3)(a)(i).

Therefore, Newton must offer a new pain management panel to Ms. Cook that does not include Dr. Hazlewood. Of course, Newton has a statutory right to include doctors as far away as Knoxville, but it seems unlikely that no other qualified doctors are available in the Nashville area. The Court is troubled by what appears to have been a cynical attempt to limit Ms. Cook's choices and force her back to the doctor who had already put her at maximum medical improvement and assigned an impairment rating. Ms. Cook testified that driving to Knoxville would be painful and the time off work would negatively affect her income, as she works on commission. Hopefully, the next panel will be more conducive to simply evaluating and treating her as recommended by Dr. Bowman.

Finally, as noted above, Newton repeatedly failed to meet its statutory duty to offer panels of physicians, a practice that only ended when it provided a panel to prevent Ms. Cook from going to the Vanderbilt Pain Center. Newton contended that this was not required, since Ms. Cook sought emergency treatment. This argument overlooks the fact that Ms. Cook went to the emergency room *because* Newton offered no medical care when she reported the injury. Further, "[a]fter an injured employee's medical condition has stabilized, the employer shall follow the requirements of subsection (1) above, the same as any alleged workplace injury not requiring emergency care." Tenn. Comp. R. & Regs. 0800-02-01-.06(3). For this reason, the Court refers this case to the Compliance Program for investigation and possible assessment of a civil penalty. *See* Tenn. Comp. R. & Regs. 0800-02-01-.06(2). Upon its issuance, a copy of this Order will be sent to the Compliance Program. *See* Tenn. Comp. R. & Regs. 0800-02-24-.03.

**IT IS, THEREFORE, ORDERED** as follows:

1.  Newton Nissan of Gallatin/Newton Ford, LLC shall continue to provide medical benefits, including a pain-management panel to evaluate and treat Ms. Cook. The panel shall not include Dr. Hazlewood.

2.  This case is referred to the Compliance Program for consideration of the imposition of a penalty regarding Newton's repeated failure to provide panels of physicians.

3.  A status hearing will take place on **February 1, 2023, at 10:00 a.m. Central Time.** The parties must call 615-532-9552 or toll-free at 866-943-0025 to participate. Failure to call might result in a determination of issues without your participation.

4.  Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit confirmation within seven business days may result in a penalty assessment for non-compliance. For questions regarding compliance, contact the Workers' Compensation Compliance Unit via email at [WCCompliance.Program@tn.gov](mailto:WCCompliance.Program@tn.gov).

**ENTERED November 21, 2022.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. Ms. Cook's Rule 72 declaration
2. Indexed medical records
3. Transcript of Dr. Jeffrey Hazlewood's deposition
4. Transcript of Dr. Michael Bowman's deposition
5. Ms. Cook's responses to Requests for Admissions (with exhibits)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Brief in Opposition to Employee's Petition for Medical Benefit
5. Employer's Witness and Exhibit List
6. Employee's Pre-Expedited Hearing Statement and List of Witnesses and Exhibits

# CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on November 21, 2022.

| Name | Certified Mail | Via Email | Service Sent To |
|---|---|---|---|
| Steven Waldron, Employee's Attorney | | X | arlenesmith@wfptnlaw.com |
| Gregory Fuller and Chris Rowe, Employer's Attorneys | | X | cgrowe@mijs.com ghfuller@mijs.com |
| Compliance Program | | X | WCCompliance.Program@tn.gov |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*